[Cite as *Gesler v. Worthington Income Tax Bd. of Appeals,* 138 Ohio St.3d 76, 2013-Ohio-4986.]

GESLER ET AL., APPELLANTS, *v.* CITY OF WORTHINGTON INCOME TAX

BOARD OF APPEALS ET AL., APPELLEES.

[Cite as *Gesler v. Worthington Income Tax Bd. of Appeals,*

138 Ohio St.3d 76, 2013-Ohio-4986.]

*Taxation—Municipal income tax—Ordinance defining net profit—Taxation as*
*power of local self-government—Decision of Board of Tax Appeals*
*reversed—City ordered to refund taxes paid.*

(No. 2012-2105—Submitted September 11, 2013—Decided November 19, 2013.)

APPEAL from the Board of Tax Appeals, No. 2009-K-1010.

_____

O'DONNELL, J.

{¶ 1} James L. and Angeline O. Gesler appeal from a decision of the Board of Tax Appeals affirming the denial of their request for a refund from the city of Worthington in connection with municipal income tax they paid on stock-option income earned in 2005, 2006, and 2007, as reported on Form 1040, Schedule C of their federal income tax return.

{¶ 2} Specifically at issue in this case is the application of former Worthington Codified Ordinance 1701.15, which defined net profit for purposes of the city's income tax for a taxpayer who is an individual as "the individual's profit, *other than amounts required to be reported on schedule C*, schedule E, or schedule F." (Emphasis added.) Our review concerns whether the BTA properly affirmed the denial of the Geslers' refund based on its view that R.C. 718.01 governs this case, because Worthington's definition of net profit in former Ordinance 1701.15 contravened the statutory definition of net profit set forth in R.C. 718.01(A)(7).

{¶ 3}   Because the municipal power of taxation involves an exercise of a power of local self-government, we need not determine whether the Worthington ordinances at issue in this case conflict with any statutory provisions. Moreover, because the General Assembly does not exercise its power to limit or restrict the municipal power of taxation through R.C. 718.01, the statutory provisions at issue do not preclude the refund. Since Worthington's ordinances excluded Schedule C income from the definition of net profit at the time the Geslers filed their municipal tax returns, that income was not subject to municipal income tax and Worthington cannot collect taxes on that income during the tax years at issue. Accordingly, because the decision of the BTA is unreasonable and unlawful, we reverse its determination and order the city of Worthington to refund the municipal taxes paid by the Geslers on Schedule C income during tax years 2005, 2006, and 2007 together with statutory interest.

**Factual Background and Procedural History**

{¶ 4}   The Geslers resided in Worthington during the tax years at issue. James Gesler is a retired certified public accountant who provided tax advisory services to clients as a sole proprietor until December 31, 2007. Two of his clients paid for his services by granting him stock options, and in 2005, 2006, and 2007, he exercised those stock options. As a result, he reported ordinary income on Schedule C of the couple's joint federal tax returns in the amounts of $649,602 for tax year 2005, $1,118,030 for tax year 2006, and $1,201,132 for tax year 2007.

{¶ 5}   The Geslers filed joint Worthington city income tax returns and reported the Schedule C federal income on Schedule J of Regional Income Tax Agency Form 37 for each year. The Geslers paid municipal income tax in accordance with the returns filed for those tax years. The Geslers then sought a refund from Worthington of the tax paid on the Schedule C income for all three tax years and statutory interest. Worthington denied the Geslers' refund claim,

2

and the Geslers appealed the denial to the city's Income Tax Board of Appeals, which we will refer to as the municipal board of appeal ("MBOA"), in accordance with a consistent practice employed by the BTA. After the MBOA rejected the Geslers' refund claim, they appealed the order to the BTA.[1]

{¶ 6} The BTA analyzed former Worthington Codified Ordinances 1703.01 and 1701.15, which provided for a tax on and defined net profit, and determined that former Ordinance 1701.15 was "clear and its terms unambiguous, therefore requiring no interpretation by this board." *Gessler* [sic] *v. Worthington Income Tax Bd. of Appeals*, BTA No. 2009-K-1010, 2012 WL 6026705, *2 (Nov. 16, 2012). The BTA concluded that the MBOA properly denied the refund because the definition of net profit found in former Ordinance 1701.15 contravened R.C. 718.01(A)(7). *Id*. at *3. Accordingly, the BTA affirmed the MBOA's denial of the refund.

{¶ 7} In their appeal of right to this court, the Geslers assert that former Ordinance 1701.15 governs this matter and must be applied as written. They further contend that R.C. 718.01 cannot be read to impose municipal tax without violating the doctrine of separation of powers and that interpreting former Ordinance 1701.15 to assess tax when the language of that ordinance provided that no tax was owed violates due process of law. The Geslers also argue that city officials are bound by city ordinances and lack standing to contravene an ordinance in order to impose a tax against a citizen. Lastly, they argue that if former Ordinance 1701.15 must be rewritten, then the BTA should have applied the doctrine of severability and given effect to as much of former Ordinance 1701.15 as possible and should have excluded their stock-option income from taxation.

---

1. In addition to naming the Worthington Income Tax Board of Appeals as a party to the appeal, the Geslers named the then city finance director, Steven R. Gandy. He has since been replaced as a party by the current finance director, Molly Roberts.

**{¶ 8}** In response, Worthington contends that the BTA properly applied R.C. Chapter 718 to conclude that enforcing former Ordinance 1705.15 as written would be unlawful, and it further contends that the BTA correctly concluded that the city's income tax was properly imposed on all net profits of residents. The city also asserts that the Geslers were afforded due process, that municipal employees have standing to respond to a challenge to the legality of a municipal tax levy, and that the BTA properly found no exemption for stock-option income in the ordinances at issue.

**{¶ 9}** Thus, the issue in this case is whether the BTA properly affirmed the denial of the refund on the basis that the definition of net profit found in former Ordinance 1701.15 contravened the definition of net profit enacted by the General Assembly.

### Standard of Review

**{¶ 10}** Pursuant to R.C. 5717.04, this court reviews a decision of the BTA to determine whether it is reasonable and lawful. We will uphold the BTA's determination of fact if the record contains reliable and probative evidence supporting its determination. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. Moreover, the court's review of a question of law is not deferential but de novo. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. Thus, we will affirm a decision of the BTA only if it correctly applies the law. *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 13.

### Statutory Framework

*Worthington Ordinances*

**{¶ 11}** Former Worthington Codified Ordinance 1703.01(c)(1) imposed a municipal income tax on "the net profits earned on or after January 1, 2004, of all unincorporated businesses, professions or other activities conducted by residents

of the City."[2]  Former Worthington Codified Ordinance 1701.15 provided that " 'net profit' for a taxpayer who is an individual means the individual's profit, *other than amounts required to be reported on schedule C*, schedule E, or schedule F."[3]  (Emphasis added.)

**{¶ 12}** In interpreting these ordinances, we follow standard rules of statutory construction.  First, "if the language is unambiguous, we must apply the clear meaning of the words used."  *Bosher v. Euclid Income Tax Bd. of Rev.*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14, citing *Roxane Laboratories, Inc. v. Tracy,* 75 Ohio St.3d 125, 127, 661 N.E.2d 1011 (1996).  Moreover, pursuant to R.C. 1.42, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage."

**{¶ 13}** We have further explained that "we must strictly construe tax ordinances and resolve any doubt as to their meaning in favor of the taxpayer."  *Bosher* at ¶ 14, citing *Roxane Laboratories* at 127.  However, "we must resolve any doubt as to the meaning of [a tax-exemption provision] in favor of taxation and against the applicability of the exemption."  *In re Estate of Roberts,* 94 Ohio St.3d 311, 315, 762 N.E.2d 1001 (2002).

**{¶ 14}** Former Ordinance 1701.15 defined net profit as "the individual's profit, *other than* amounts required to be reported on schedule C."  (Emphasis added.)  Thus, Worthington's former definition of net profit excludes amounts required to be reported on Schedule C of Form 1040.  *See Roberts* at 314 (statutory provision stating that the value of the gross estate "does not include" certain property "unmistakably *excludes* certain property from a calculation of the

---

2. Subsequent amendments to this ordinance do not affect the analysis in this case.

3. In 2008, Worthington enacted a revised definition of net profit to *include* income reported on Schedule C.  Worthington Codified Ordinance 1701.15, as amended by Ordinance No. 43-2008, provides: " 'net profit' for a taxpayer who is an individual means the individual's profit required to be reported on Federal Schedules C, E, or F, excluding those amounts exempted by Section 718.01(F) of the Ohio Revised Code."

gross estate's value" [emphasis sic]). Therefore, for the tax years at issue, the Geslers' Schedule C income is not subject to Worthington income tax pursuant to the clear wording of former Ordinances 1703.01(c)(1) and 1701.15.

*R.C. 718.01*

{¶ 15} Former R.C 718.01(D)(1) provided: "Except as provided in division E or F of this section, no municipal corporation shall exempt from a tax on income * * * the net profit from a business or profession."[4] Am.Sub.H.B. No. 95, 150 Ohio Laws, Part I, 396, 632. For taxable years beginning on or after January 1, 2004, R.C. 718.01(A)(7) defines net profit for a taxpayer who is an individual as "the individual's profit * * * required to be reported on schedule C, schedule E, or schedule F."

{¶ 16} Moreover, former R.C. 718.01(E)[5] stated:

> In the case of a taxpayer who has a net profit from a business or profession that is operated as a sole proprietorship, no municipal corporation may tax or use as the base for determining the amount of the net profit that shall be considered as having a taxable situs in the municipal corporation, an amount other than the net profit required to be reported by the taxpayer on schedule C or F from such sole proprietorship for the taxable year.

However, this case does not require a determination of whether these statutory provisions conflict with the Worthington ordinances, because such a conflict analysis is not necessary when the municipality exercises a power of local self-

---

4. R.C. 718.01(D)(1) has subsequently been amended, but the pertinent language has not substantively changed.

5. With the enactment of 2007 Am.Sub.H.B. No. 24, effective December 21, 2007, the quoted portion of former R.C. 718.01(E) was recodified as R.C. 718.01(G)(1). The statutory language is the same.

government. Moreover, the General Assembly does not limit or restrict the municipal power to tax in this instance.

**Municipal Power to Tax**

{¶ 17} Municipal power over matters of local self-government is derived from the Constitution. *State ex. rel. Bednar v. N. Canton,* 69 Ohio St.3d 278, 280, 631 N.E.2d 621 (1994). The Home Rule Amendment to the Ohio Constitution, Article XVIII, Section 3, provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Moreover, Article XVIII, Section 7 states that "[a]ny municipality * * * may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

{¶ 18} It is well established that "[t]he municipal taxing power is one of the 'powers of local self-government' expressly delegated by the people of the state to the people of municipalities." *Cincinnati Bell Tel. Co. v. Cincinnati,* 81 Ohio St.3d 599, 605, 693 N.E.2d 212 (1998), citing *State ex rel. Zielonka v. Carrel,* 99 Ohio St. 220, 227, 124 N.E. 134 (1919). Therefore, because Worthington's taxing authority is a power of local self-government, it is not necessary to determine whether R.C. 718.01 is a general law and, if so, whether the Worthington ordinances conflict with the statute. *See Cincinnati Bell* at 605; *see also Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 24, quoting *Am. Fin. Servs. Assn. v. Cleveland,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23 (if an ordinance relates solely to matters of self-government, the home-rule analysis stops because Article XVIII, Section 3 " 'authorizes a municipality to exercise all powers of local self-government within its jurisdiction' ").

{¶ 19} While Worthington points to *Fisher v. Neusser,* 74 Ohio St.3d 506, 507, 660 N.E.2d 435 (1996), to assert that municipalities "have the right to

exercise all powers of local self-government and may adopt and enforce such local regulations that are not in conflict with the general law," we have subsequently established that a conflict analysis is not necessary when a municipality exercises a power of local self-government. *Ohioans for Concealed Carry* at ¶ 24. The power to impose a municipal income tax is a power of local self-government, and when considering an exercise of municipal taxing power, the analysis turns on whether the General Assembly exercises its power to limit or restrict the municipal taxing authority. *See* Article XVIII, Section 13 of the Ohio Constitution, which provides that the General Assembly may "limit the power of municipalities to levy taxes and incur debts," and Article XIII, Section 6, which states that the General Assembly "shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation, * * * so as to prevent the abuse of such power."

{¶ 20} We have explained that "[g]iven this general, broad grant of power that municipalities enjoy under Article XVIII, the Constitution requires that the provisions allowing the General Assembly to limit municipal taxing power be interpreted in a manner consistent with the purpose of home rule." *Cincinnati Bell*, 81 Ohio St.3d at 605, 693 N.E.2d 212. Moreover, "in the absence of an express statutory limitation demonstrating the exercise, by the General Assembly, of its constitutional power, acts of municipal taxation are valid." *Id.* at 606.

{¶ 21} Furthermore, although the Constitution grants the General Assembly the power to limit or restrict the municipal power to tax, Worthington fails to point to any constitutional provision that confers on the General Assembly the authority to command a municipality to impose a tax when it chooses not to do so.

{¶ 22} Here, for the tax years at issue, Worthington chose not to tax Schedule C income, and the General Assembly cannot limit or restrict a power of taxation that Worthington did not exercise. Moreover, in this circumstance, the

8

General Assembly is not exercising power to limit or restrict municipal taxing authority, but rather is directing imposition of a tax on Schedule C income. *See, e.g., State ex rel. Dayton v. Bish,* 104 Ohio St. 206, 210-213, 135 N.E. 816 (1922) (holding that a statute providing that "in no case shall the combined maximum rate for all taxes levied in any year * * * exceed fifteen mills" limited the municipality's power to levy a tax that would exceed the 15-mill limitation). Thus, the General Assembly cannot command Worthington to impose a tax on Schedule C income when Worthington has chosen not to tax that income, because such a requirement is not an act of limitation. In the absence of any statute that functions as an "express act of restriction by the General Assembly," *Cincinnati Bell* at 605, the former ordinance excluding Schedule C income from the definition of net profit is a valid exercise of the city's municipal power to tax.

### Conclusion

**{¶ 23}** The former Worthington ordinances at issue excluded Schedule C income from the definition of net profit, and therefore, the Geslers' Schedule C income for the years at issue is excluded from municipal tax. Furthermore, since the imposition of a municipal tax is an exercise of a power of local self-government and the General Assembly does not limit or restrict the exercise of municipal taxing authority in this case, we need not determine whether a conflict exists between the former Worthington ordinances and the state statutory provisions. Accordingly, we reverse the determination of the BTA as being unreasonable and unlawful and order that the Geslers are entitled to the refund they seek, together with statutory interest.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Vorys, Sater, Seymour & Pease, L.L.P., David A. Froling, Jeffrey Allen Miller, and Steven L. Smiseck, for appellants.

Baker & Hostetler, L.L.P., and Andrew M. Ferris, for appellees.

_____