[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *MacDonald v. Cleveland Income Tax Bd. of Rev.,* Slip Opinion No. 2017-Ohio-7798.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7798

MACDONALD ET AL., APPELLEES, *v*. CLEVELAND INCOME TAX BOARD OF REVIEW ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *MacDonald v. Cleveland Income Tax Bd. of Rev.,* Slip Opinion No. 2017-Ohio-7798.]**

*Taxation—Supplemental executive retirement plan was not taxable under city's income-tax ordinances—Board of Tax Appeals' decision affirmed.*

(No. 2016-0778—Submitted June 21, 2017—Decided September 26, 2017.)

APPEAL from the Board of Tax Appeals, No. 2009-1130.

_____

**DEWINE, J.**

**{¶ 1}** This appeal presents the question whether a corporate executive's supplemental executive retirement plan ("SERP") is subject to Cleveland's income tax.  Upon retirement, the executive became entitled to receive benefits from the plan, which will be paid from an annuity over the course of his and his wife's lives.  The city of Cleveland sought to tax the present value of those future payments at

the time of the retirement. A Cleveland ordinance, however, exempts "pensions" from the city income tax. Because we conclude that the SERP constitutes a pension, we hold that the city income tax does not apply.

{¶ 2} In the proceeding below, the Board of Tax Appeals ("BTA") reached the same conclusion that we do today. Thus, we affirm the BTA's decision.

## I. BACKGROUND

{¶ 3} William E. MacDonald III retired from National City Corporation in 2006, after having worked there for 38 years. As one of the bank's top executives, MacDonald was entitled to participate in National City's SERP.

{¶ 4} Common in the corporate world, a SERP is used to supplement the benefits received by executives under traditional plans, such as qualified defined-benefit or defined-contribution (401(k)) plans. For federal-tax purposes, a SERP is considered a "nonqualified deferred-compensation plan." 26 U.S.C. 3121(v)(2)(C). The payments are "nonqualified" in the sense that the plan is not entitled to receive the favorable tax treatment accorded to qualified plans under the Internal Revenue Code.

{¶ 5} Because payments from "qualified" plans are limited by federal tax law, the SERP provides additional benefits in order that covered executives may receive a targeted percentage of their pay upon retirement. A SERP is sometimes referred to as a "top-hat plan" because it is typically limited to a small number of highly compensated employees.

{¶ 6} Although considered to be a "nonqualified deferred-compensation" plan under federal tax law, MacDonald's SERP did not involve any deferral of current wages owed or the set-aside of any amounts in a segregated account by the employer. Rather, the SERP was an unfunded promise to pay—in other words, a general, unsecured obligation on the part of the employer.

{¶ 7} MacDonald's SERP was designed to allow him to receive approximately 60 percent of the compensation he had received in his top-earning

2

years, after taking into account Social Security and other retirement benefits. Under the terms of his SERP, MacDonald and his wife, Susan W. MacDonald, began receiving payments in 2007 from a joint-survivorship annuity.

{¶ 8} MacDonald was required to pay federal Medicare tax on the present value of the annuity payments for the 2006 tax year. The present value was calculated to be $9,107,013.16 and was reported in box 5 of MacDonald's W-2 form. MacDonald was not required to pay federal income tax on the SERP in 2006; instead, federal income tax will be imposed on payments as they are made over the MacDonalds' retirement years.

{¶ 9} National City did not withhold and remit city income tax on the SERP. Ultimately, the city assessed $182,140.26 in taxes on the SERP, which represented the application of the city's 2 percent tax on the present value of the annuity payments, which had been reported in box 5. The MacDonalds protested the assessment, asserting that the SERP was not subject to city tax.

{¶ 10} In September 2008, the city's tax administrator issued an administrative ruling rejecting the MacDonalds' assertion and upholding the assessment. The MacDonalds appealed to the Cleveland Income Tax Board of Review ("review board"), which also upheld the assessment. The MacDonalds then appealed to the BTA. The BTA looked to Cleveland Codified Ordinances 191.0901(d), which excludes pensions from the city income tax. Reasoning that the SERP fell within the "commonly accepted definition of pension," the BTA found that the SERP was not subject to the tax and reversed the review board's decision. The review board and Cleveland's tax administrator, Nassim M. Lynch, have appealed to this court. Lynch, through the Central Collection Agency, administers the income-tax laws of the city. For convenience, we will refer to appellants collectively as "Cleveland" or "the city."

{¶ 11} The proceeding below was actually the second time the BTA had considered the taxability of the MacDonalds' SERP. The city of Shaker Heights

3

had also sought to impose its income tax on the SERP. The BTA determined that the SERP was not taxable under the Shaker Heights code, and the Tenth District Court of Appeals affirmed that decision. *See MacDonald v. Shaker Hts. Income Tax Bd. of Rev.*, 10th Dist. Franklin No. 13AP-71, 2014-Ohio-708. We accepted a discretionary appeal from the court of appeals' decision as to the scope of the BTA's review but declined jurisdiction over the substantive issue of the taxability of the SERP. *MacDonald v. Shaker Hts. Income Tax Bd. of Rev.*, 144 Ohio St.3d 105, 2015-Ohio-3290, 41 N.E.3d 376, ¶ 4. In this appeal, we squarely confront the taxability of the SERP under the ordinances and regulations of the city of Cleveland.

## II. ANALYSIS

{¶ 12} We review the decision of the BTA to determine whether it is reasonable and lawful. R.C. 5717.04. In doing so, we review de novo the BTA's construction of Cleveland's ordinances and regulations. *See Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, ¶ 10. We find nothing unreasonable or unlawful about the BTA's decision.

### A. The SERP Is a Pension

{¶ 13} The MacDonalds' argument for affirmance is straightforward. They rely upon Cleveland Codified Ordinances 191.0901(d)'s exclusion of pension benefits:

> The tax provided for in this chapter shall not be levied on the following: * * * [p]roceeds of insurance paid by reason of the death of the insured; *pensions*, disability benefits, annuities, or gratuities not in the nature of compensation for services rendered from whatever source derived.

(Emphasis added.) We will call this provision the "pension exclusion." The MacDonalds maintain that the SERP is a pension and that therefore it is excluded from taxable income.

{¶ 14} Cleveland counters that the pension exclusion does not apply to the SERP for four reasons: (1) the SERP is compensation for services rendered, (2) the SERP does not qualify as a pension under the tax administrator's Rules and Regulations, (3) the SERP is taxable as a nonqualified deferred-compensation plan under Cleveland ordinances, and (4) the SERP is taxable as a matter of state law.

{¶ 15} We address each of the city's arguments in turn.

### 1. Cleveland's compensation-for-services-rendered argument

{¶ 16} We start our analysis with the pension exclusion. Cleveland's income-tax ordinances unambiguously exclude "pensions" from the city income tax. Black's Law Dictionary provides the following definition of "pension": "[a] fixed sum paid regularly to a person (or to the person's beneficiaries), esp. by an employer as a retirement benefit." *Black's Law Dictionary* 1315 (10th Ed.2014). Webster's Third New International Dictionary includes the following definition: "a fixed sum paid regularly to a person * * *: one paid under given conditions to a person following his retirement from service (as due to age or disability) or to the surviving dependents of a person entitled to such a pension." *Webster's Third New International Dictionary* 1671 (2002). Under either definition, the SERP plainly is a pension. It is a sum of money regularly paid to the MacDonalds as a retirement benefit. An ordinary speaker of the English language would have little difficulty in concluding that what the MacDonalds received from National City was a pension.

{¶ 17} Such an understanding of the term is reinforced when the pension exclusion is read as a whole. The language of the ordinance has broad reach, evincing an intent to reach a multitude of retirement, death, and disability payments. The exclusion is phrased to encompass all those amounts that are themselves "not

in the nature of compensation for services rendered" but instead substitute for such compensation upon death, disability, or retirement. Cleveland Codified Ordinances 191.0901(d).

{¶ 18} Cleveland characterizes the SERP as compensation for services rendered and thus suggests that the exclusion does not apply. What Cleveland apparently means is that because MacDonald received the SERP by virtue of his having been employed by National City, the SERP retirement benefit is "in the nature of compensation for services rendered." But this argument stretches the meaning of the phrase much too far. Virtually any pension—including a traditional qualified defined-benefit plan, which Cleveland admittedly does not tax—comes about as a result of someone having performed services for an employer. Plainly, if the pension exclusion is to have any application at all, the phrase "in the nature of compensation for services rendered" must have a more limited scope than Cleveland would give it.

{¶ 19} By its terms, the purpose of McDonald's SERP was to "provide for the payment of certain pension, disability, and survivor benefits in addition to benefits which may be payable under other plans of the Corporation." Thus, under the plain language of the pension exclusion in the Cleveland income-tax ordinance, the SERP is exempt from taxation.

### 2. Cleveland's regulation-based argument

{¶ 20} Cleveland argues that the definition of "pension" is limited by the tax administrator's Rules and Regulations in effect in 2006:

> 2:30 Pensions means distributions from retirement plans as reported on Federal Form 1099R, or its equivalent or successor form, in the year paid, and which are designed to provide primarily for the retirement income of employees. Pension distributions are not taxable; contributions to pension plans, retirement plans,

6

deferred compensation plans, as well as any other type of deferred compensation arrangement or income deferral arrangement or plan, are taxable in the year the income is earned and deferred.

\* \* \*

6:03 Insurance and Annuity Proceeds, Certain Employee Benefits and Gifts.

(A) The following additional items are specifically exempted from the tax imposed by this ordinance:

\* \* \*

2. Distributions from pension plans reported to the payee on Federal Form 1099-R or substantive equivalent.

\* \* \*

(B) The following items are not exempt from the tax imposed by the ordinance (this is not an exhaustive list):

\* \* \*

2. Deferred compensation of any kind, whether deferred under a retirement plan or under any other type of compensation arrangement or contract, including any qualified or nonqualified deferrals made by an employer or the employee or both.

As a nonqualified deferred-compensation plan, the SERP was not reported on Form 1099-R. Internal Revenue Service, Instructions for Forms 1099-R and 5498, https://www.irs.gov/pub/irs-pdf/i1099r.pdf (accessed Aug. 23, 2017). Thus, Cleveland argues, it does not qualify as a pension.

{¶ 21} The problem with Cleveland's argument is that it requires that we hold that the tax administrator had the power to adopt rules that supersede an ordinance passed by city council. Under Cleveland Codified Ordinances 191.2303(a), the tax administrator may (with the approval of the review board)

adopt and enforce "rules and regulations relating to any matter or thing pertaining to the collection of taxes and the administration and enforcement of the provisions of this chapter, including provisions for the re-examination and correction of returns." This section, however, does not provide the administrator with the power to change the terms of ordinances. The limiting definition of "pension" adopted by the tax administrator goes beyond the "collection of taxes" and the "administration and enforcement" of Cleveland Codified Ordinances Chapter 191 and works a substantive change regarding what is taxable.

{¶ 22} At oral argument, Cleveland's counsel asserted that the Rules and Regulations had been first promulgated by the tax administrator and then adopted and incorporated into the city ordinance. It is true that in 2004—with the applicable regulations already in place—city council amended its ordinance, adding a reference to the Rules and Regulations in the definition of "taxable income": " 'Taxable income' means all qualifying wages, net profits and all other income from whatever source derived set forth in Section 191.0501, *and the Rules and Regulations* as taxable." (Emphasis added.) Cleveland Codified Ordinances 191.0318. But as counsel conceded, city council did not vote to ratify the specific Rules and Regulations promulgated by the tax administrator. And we are not convinced that mere reference to the Rules and Regulations is sufficient to allow the tax administrator to make taxable what an ordinance specifically says is not taxable.

{¶ 23} We were confronted with a somewhat similar situation in *Nestle R&D Ctr., Inc. v. Levin*, 122 Ohio St.3d 22, 2009-Ohio-1929, 907 N.E.2d 714. There, an administrative rule authorized the director of the Department of Development to "adopt rules necessary to implement" a tax credit for the creation of new jobs. The issue before us concerned the proper reading of a statute, R.C. 5733.12(B), which provided the limitation period for filing for a tax refund for creating new jobs. We held that while the statutory authorization for rule

8

promulgation "surely confers authority on the Department of Development to establish reasonable deadlines for submitting documentation, we do not read that provision as authorizing the Director of Development to provide the definitive construction of R.C. 5733.12(B)." *Id.* at ¶ 40. Similarly, we do not read either Cleveland Codified Ordinances 191.2303 or 191.0318 as authorizing the tax administrator to make a definitive determination as to what is taxable.

{¶ 24} A rulemaker possesses only the authority granted it by a legislative body; an administrative rule that conflicts with a municipal ordinance is invalid. *See Hoover Universal, Inc. v. Limbach*, 61 Ohio St.3d 563, 569, 575 N.E.2d 811 (1991); *Athens Home Tel. Co. v. Peck*, 158 Ohio St. 557, 562, 110 N.E.2d 571 (1953). In *United States v. Calamaro*, 354 U.S. 351, 358-359, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957), the court declined to defer to a treasury-department regulation in construing who was covered by a tax imposed by the Internal Revenue Code. The regulation, which expanded the universe of who was covered by the tax, was "no more than an attempted addition to the statute of something which [was] not there." *Id.* at 359. The same goes here: the Rules and Regulations attempt to expand the tax by adding to the ordinance "something which is not there"—in this case, a requirement that only those pensions reported on federal Form 1099-R are subject to the exclusion.

{¶ 25} Contrary to the city's claim, our decision in *Hillenmeyer v. Cleveland Bd. of Rev.*, 144 Ohio St.3d 165, 2015-Ohio-1623, 41 N.E.3d 1164, does not compel a different result. In that case, we held that the tax administrator's rulemaking authority extended to spelling out a formula for applying the city's income tax to nonresidents who performed a portion of their work in the city. *Id.* at ¶ 20. But in *Hillenmeyer*, the ordinance was silent about the manner in which taxes should be levied against nonresidents. Here, in contrast, the ordinance specifically provides that anything that is a pension is beyond the scope of the

income tax. The tax administrator's rulemaking authority does not allow him to dictate otherwise.

### 3. Cleveland's ordinance-based argument

**{¶ 26}** Cleveland's further attempt to avoid the pension exclusion rests on the definition of "qualifying wages" in Cleveland's Codified Ordinances. For tax year 2006, Cleveland imposed taxes on "all qualifying wages, earned and/or received * * * by nonresidents of the City for work done or services performed or rendered within the City or attributable to the City." Cleveland Codified Ordinances 191.0501(b)(1). The ordinance defined "qualifying wages" to include "compensation attributable to a nonqualified deferred compensation plan or program as defined in section 3121(v)(2)(C) of the Internal Revenue Code." Cleveland Codified Ordinances 191.031501. The SERP is a nonqualified deferred-compensation plan for purposes of 26 U.S.C. 3121(v)(2)(C). Thus, Cleveland argues, the ordinance makes the present value of the SERP immediately taxable.

**{¶ 27}** The two Cleveland income-tax ordinances are at odds. One— Cleveland Codified Ordinances 191.031501—would seem to make the SERP taxable because it falls within the definition of "qualifying wages." The other ordinance—Cleveland Codified Ordinances 191.0901(d) (the pension exclusion)— says that the SERP is not taxable. In reconciling this conflict, we turn to the familiar rule of statutory construction that when there is a conflict between a general provision and a more specific provision in a statute, the specific provision controls. Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012). *See* R.C. 1.51. The canon rests on the rationale that " '[t]he particular provision is established upon a nearer and more exact view of the subject than the general, of which it may be regarded as a correction.' " Scalia & Garner, *Reading Law* at 183, quoting Jeremy Bentham, *A Complete Code of Laws*, in 3 *The Works of Jeremy Bentham* 210 (John Bowring Ed.1843). Here, the more general definition of

10

"qualifying wages" is limited by the specific provision, which excludes pensions from the broad definition.

{¶ 28} Adoption of Cleveland's interpretation of the ordinances would have the effect of making the pension exclusion largely, if not completely, superfluous. Quite simply, the definition of "qualifying wages" in the ordinance refers to the definition of "wages" in 26 U.S.C. 3121 that is used for the so-called payroll or FICA taxes that fund Social Security and Medicare benefits. That definition broadly includes "all remuneration for employment" for purposes of the FICA tax base, subject to the exclusion of items prescribed in 26 U.S.C. 3121(a)(1) through (a)(23). These exclusions include the benefits a retiree receives from a qualified pension plan, 26 U.SC. 3121(a)(5)(A), as well as an employer's payments made "on account of sickness or accident disability," 26 U.S.C. 3121(a)(4). These same benefits are excluded by the pension exclusion. If, as Cleveland argues, 26 U.S.C. 3121's definition of "wages" is fully controlling, there would be no need for the separate pension exclusion.

{¶ 29} The city counters that the BTA's decision finding the SERP nontaxable "renders meaningless" the income-tax-ordinance provisions levying the city tax on nonqualified deferred compensation. *See* Cleveland Codified Ordinances 191.0501(b)(1) and 191.031501. But this is not the case. In fact, the record shows that National City offered its executives the opportunity to defer a portion of their wages or bonuses to be paid later, and this deferred compensation would be "nonqualified deferred compensation" subject to the city's taxation. Such a deferred amount would be included as "qualifying wages" because it is "compensation attributable to a nonqualified deferred compensation plan or program" under Cleveland Codified Ordinances 191.031501. And because it is clearly not a pension, it would not be excluded under Cleveland Codified Ordinance 191.0901(d). Thus, the deferred amount would be taxable.

**{¶ 30}** We conclude that the definition of "qualifying wages" in Cleveland Codified Ordinances 191.031501 does not override the exclusion of the SERP from the city income tax as a pension in Cleveland Codified Ordinances 191.0901(d).

### 4. Cleveland's state-law argument

**{¶ 31}** Cleveland also argues that because the city had elected to tax on a qualifying-wages basis under former R.C. Chapter 718, it was required by state law to impose its income tax on the SERP. Under former R.C. Chapter 718, "qualifying wages" were defined as those wages included in 26 U.S.C. 3121(a), subject to certain adjustments. *See* former R.C. 718.03(A), Am.Sub.H.B. No. 95, 150 Ohio Laws, Part I, 396, 638.[1] The chapter excluded from "qualifying wages"

> any amount attributable to a nonqualified deferred compensation plan or program described in section 3121(v)(2)(C) of the Internal Revenue Code if the compensation is included in wages and has, by resolution or ordinance, been exempted from taxation by the municipal corporation.

Former R.C. 718.03(A)(2)(c), 150 Ohio Laws, Part I, at 639.

**{¶ 32}** As Cleveland reads the statute, because the city taxes on a qualifying-wages basis, it is required to tax "amount[s] attributable to a nonqualified deferred compensation plan" unless it specifically excludes those amounts by ordinance. But the city *has* excluded these amounts by ordinance—the pension exclusion exempts the SERP at issue from taxation. Further, even if the pension exclusion somehow did not satisfy the requirement of the state statute, our decision in *Gesler*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, would prevent the imposition of the tax. There, we held that although the General

---

[1] R.C. Chapter 718 was comprehensively rewritten in 2014. 2014 Sub.H.B. No. 5 (effective Mar. 23, 2015). We rely on the version of the law that was in force in 2006.

Assembly can restrict a city's power to tax, it "cannot command [a city] to impose a tax [on specific income] when [the city] has chosen not to tax that income." *Id.* at 21-22.

### B. Cleveland's Additional Arguments Lack Merit

**{¶ 33}** Cleveland raises a number of other arguments that we can dispose of quickly. It challenges certain procedural aspects of the BTA proceeding, arguing generally that the BTA failed to afford appropriate deference to the decision of the review board. But in *MacDonald v. Shaker Hts. Income Tax Bd. of Rev.*, 144 Ohio St.3d 105, 2015-Ohio-3290, 41 N.E.3d 376, we specifically held that the BTA has authority to review municipal-tax-board decisions de novo as to both facts and law. *Id.* at ¶ 23. We also conclude that the BTA did not abuse its discretion in allowing Patricia Emond to testify regarding background information about the SERP or in considering the testimony she gave in the Shaker Heights case. *See Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 74 Ohio St.3d 415, 416-417, 659 N.E.2d 1223 (1996). Further, we are not persuaded that the BTA restricted Cleveland's home-rule authority under Ohio Constitution, Article XVIII, Section 3, when it applied Cleveland's ordinances to determine whether the SERP was a pension. In short, we find no error in the review undertaken by the BTA here.

**{¶ 34}** Finally, Cleveland contends that the MacDonalds are estopped from contesting the tax assessment because in 1997 their counsel in this case signed a settlement letter on behalf of National City and other corporate clients that allegedly acknowledges that a SERP like the one at issue here is subject to city taxation. There is some dispute as to what type of retirement benefits that agreement covered; but regardless, the MacDonalds cannot be estopped by an agreement to which they were not a party.

### III. CONCLUSION

**{¶ 35}** For the foregoing reasons, we conclude that the BTA correctly reversed the review board's decision.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, and FISCHER, JJ., concur.

_____

Baker & Hostetler, L.L.P., Christopher J. Swift, Edward J. Bernert, and Elizabeth A. McNellie, for appellees.

Barbara A. Langhenry, Cleveland Director of Law, and Linda L. Bickerstaff, Assistant Director of Law, for appellants.

_____