[Cite as *Karvo Paving Co. v. Testa*, 2019-Ohio-3974.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

KARVO PAVING CO.

      Appellee/Cross-Appellant

      v.

JOSEPH W. TESTA, TAX
COMMISSIONER OF OHIO

      Appellant/Cross-Appellee

C.A. No.     28930

APPEAL FROM JUDGMENT
ENTERED IN THE
OHIO BOARD OF TAX APPEALS
COUNTY OF SUMMIT, OHIO
CASE No.    2016-782

DECISION AND JOURNAL ENTRY

Dated: September 30, 2019

HENSAL, Judge.

{¶1} Joseph W. Testa, Tax Commissioner of Ohio, appeals a decision of the Board of Tax Appeals. Karvo Paving Co. has cross-appealed. For the following reasons, this Court affirms in part and reverses in part.

I.

{¶2} Karvo is a road construction company that does most of its work for the Ohio Department of Transportation (ODOT). According to Karvo's owner, George Karvounides, ODOT's contracts usually require it to provide and install traffic maintenance equipment during the project. The equipment can include concrete barrier walls, temporary traffic lights, signs, and message boards. Some years ago, a company that provided maintenance services and equipment to Karvo went out of business. Mr. Karvounides and his wife formed a new company, which did business as K&H Excavating, LLC (K&H), to acquire the equipment and

personnel of the closing business. After K&H formed, it provided the same equipment and maintenance services to Karvo as the former company.

{¶3}   The Commissioner audited Karvo for the period of January 1, 2008, to June 30, 2013. In addition to other items that are not at issue in this appeal, he assessed a use tax on the traffic maintenance equipment that Karvo provided while performing ODOT contracts. He also assessed tax on the employment services that K&H provided to Karvo and on the equipment that K&H rented to Karvo.

{¶4}   Karvo petitioned for reassessment. Following a hearing, the Commissioner issued a final determination that denied Karvo's objections to the tax assessment. Karvo appealed to the Board of Tax Appeals. Following another hearing, the Board determined that Karvo did not have to pay use tax on the traffic maintenance equipment it installed while performing ODOT contracts because it was effectively leasing the equipment to ODOT during the construction projects. It determined that Karvo did not have to pay tax on the employment services that K&H provided to it because K&H was part of the same affiliated group as Karvo. On the other hand, it determined that Karvo did have to pay tax on the equipment it leased from K&H because the leases did not qualify as casual sales. The Commissioner has appealed the Board's decision, and Karvo has cross-appealed.

II.

COMMISSIONER'S ASSIGNMENT OF ERROR I

SALES AND USE TAX APPEALS MUST BE BROUGHT IN THE 10TH DISTRICT COURT OF APPEALS PURSUANT TO R.C. 5717.02.

{¶5}   The Commissioner initially argues that this Court does not have jurisdiction over the appeals, asserting that they belong in the Tenth District Court of Appeals. Revised Code Section 5717.04 provides, in relevant part,

> The proceeding to obtain a reversal, vacation, or modification of a decision of the board of tax appeals determining appeals from final determinations by the tax commissioner of any preliminary, amended, or final tax assessments * * * shall be by appeal to the supreme court or to the court of appeals for the county in which the property taxed is situated or in which the taxpayer resides. If the taxpayer is a corporation, then the proceeding to obtain such reversal, vacation, or modification shall be by appeal to the supreme court or to the court of appeals for the county in which the property taxed is situated, or the county of residence of the agent for service of process, tax notices, or demands, or the county in which the corporation has its principal place of business. In all other instances, the proceeding to obtain such reversal, vacation, or modification shall be by appeal to the court of appeals for Franklin county.

Karvo argues that, because it is a corporation and its principal place of business is in Stow, which is in Summit County, the Commissioner's appeal and its cross-appeal were both properly filed in this Court.

{¶6} The Commissioner argues that this Court should follow the decision of the Tenth District Court of Appeals in *Stines v. Limbach*, 61 Ohio App.3d 461 (10th Dist.1988). In *Stines*, Erwin Stines sought a refund of the tax he had paid on a new car after the sale was rescinded. The Tenth District held that, because sales tax is an excise tax, which is a tax on the transaction itself, "there is no tax on property involved[.]" *Id*. at 464. Noting that language in Section 5717.04 indicated that the term "'[t]axpayer' includes any person required to return any property for taxation[,]" the Court reasoned that, in the case of an excise tax, "there can be no person required to return property for taxation[.]" (Emphasis omitted.) *Id*. "[T]hus, no 'taxpayer' to file an appeal." *Id*. In light of its determination that sales tax does not involve a taxpayer and that the property at issue did not have a situs, it concluded that the "other instances" language in Section 5717.04 applied and that the appeal was appropriate in the Tenth District. *Id*. at 465.

{¶7} Upon review of Section 5717.04, we conclude that the Tenth District misinterpreted the provision "'taxpayer' includes any person required to return any property for taxation." When the General Assembly prefaces a definition with the term "includes" it is "a

term of expansion, not one of limitation or restriction." *State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 172 (1988), citing *In re Hartman*, 2 Ohio St.3d 154, 156 (1983). In *Stines*, however, the Tenth District held that, "[t]he word 'taxpayer' is limited to the person paying tax on property and does not apply to persons paying excise taxes[.]" *Stines* at 466. We do not agree that the definition of "taxpayer" is so limited.

{¶8} The Commissioner also relies on *City of Marion v. City of Marion Bd. of Review*, 3d Dist. Marion No. 9-07-37, 2008-Ohio-2496. In that case, the City of Marion appealed a decision of the Board of Tax Appeals that Shannon Leary did not owe any income tax to the city. The Board had found that Ms. Leary was not a resident of the city when she earned her income, that she worked outside of the city, and that, when she resided in the city, she earned no income. The Third District explained that, because Ms. Leary was an individual and the case did not involve property, the provisions in Section 5717.04 referring to where "the property taxed is situate[d]" and "in which the 'taxpayer resides'" did not confer jurisdiction to it. *Id*. at ¶ 8. Unlike in that case, Karvo is a corporation and there is no dispute that its principal place of business is and was in Summit County.

{¶9} The ordinary definition of a taxpayer is "one that pays or is liable to pay a tax[.]" *Webster's Third New International Dictionary* 2345 (1993). In this case, the taxpayer is Karvo, who the Commissioner determined must pay sales or use taxes on the traffic maintenance equipment it provides while performing ODOT contracts, the employment services it received from K&H, and the equipment it rented from K&H. *See Kroger Co. v. Lindley*, 56 Ohio St.2d 138, 140 (1978) (referring to the company that paid use tax on fuel oil as the "taxpayer[.]"). Applying the ordinary definition of taxpayer to Section 5717.04 is consistent with its direction that, under that Section, the term also "includes any person required to return property for

taxation[,]" even if that person was not the payer of the tax or is not liable for the tax. R.C. 5717.04. Accordingly, we conclude that this Court has jurisdiction of the appeals under Section 5717.04 because Karvo is a corporation and it has its principal place of business in one of the counties within this District. The Commissioner's first assignment of error is overruled.

COMMISSIONER'S ASSIGNMENT OF ERROR II

PROPERTY OWNED, MAINTAINED, AND USED AT ALL TIMES BY A CONSTRUCTION CONTRACTOR IS NOT "RESOLD" AND SUBJECT TO EXEMPTION THEREBY, MERELY BECAUSE THE CONSTRUCTION CONTRACT SPECIFIES THE TYPE AND MANNER OF USE OF SUCH PROPERTY. THE BTA ERRED IN HOLDING OTHERWISE.

{¶10} The Commissioner next argues that the Board incorrectly determined that Karvo does not owe tax for the traffic maintenance equipment it supplies under its contracts with ODOT. According to the Commissioner, Karvo owes use tax for the equipment because it uses it in performance of a construction contract. *See* R.C. 5741.02(A)(1). We review the decision of the Board to determine whether it was "reasonable and lawful * * *." R.C. 5717.04; *Gesler v. City of Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, ¶ 10. "We will uphold the [Board's] determination of fact if the record contains reliable and probative evidence supporting its determination." *Id*. This Court's review of a question of law, however, is not deferential. *Id*.

{¶11} The Board found that Karvo does not use the traffic maintenance equipment while working on ODOT contracts. Instead, it found that Karvo essentially rents the equipment to ODOT to allow ODOT to maintain traffic during Karvo's work. The Board found that ODOT dictates the amount and type of traffic maintenance equipment required for a project and controls its placement and use during the project. It also found that, although Karvo's workers benefit from the placement of the equipment, the equipment is not necessary to their paving work.

Specifically, it noted that Mr. Karvounides testified that Karvo could ensure the safety of its workers just as well by working on smaller sections of the road and using barrels instead of the concrete barriers required by ODOT.

{¶12} The Board also concluded that Karvo did not owe sales tax for its initial purchase of the traffic maintenance equipment. Under Section 5739.02, the State levies a tax on "each retail sale made in this state." The term "retail sale" "include[s] all sales, except those in which the purpose of the consumer is to resell the thing transferred or benefit of the service provided, by a person engaging in business, in the form in which the same is, or is to be, received by the person." R.C. 5739.01(E). The Board found that, because Karvo purchased the traffic maintenance equipment in order to rent it to ODOT during construction projects, the purchases did not qualify as retail sales and were excepted from taxation under Section 5739.01(E).

{¶13} The Commissioner argues that Karvo uses the traffic maintenance equipment because it holds title to and has possession of the equipment throughout construction projects. He argues that Karvo transports the equipment to the project site, installs the equipment, maintains the equipment, repairs it if necessary, and operates the equipment, all in performance of its contractual obligations. The Commissioner also argues that the resale exemption in Section 5739.01(E) does not apply because Karvo retains ownership, control, use, and possession of the equipment at all times. ODOT, on the other hand, simply supervises Karvo's work to ensure that Karvo is complying with the contracts' terms. The Commissioner further argues that the Board's interpretation of Section 5739.01 is inconsistent with Ohio Administrative Code 5703.09.14(H) and will greatly expand the scope of Ohio's sale and use taxes.

{¶14} Karvo argues that the Board correctly found that it transfers the traffic maintenance equipment to ODOT during its construction projects. It notes that ODOT specifies

the type, quantity, and placement location of all of the equipment. Once Karvo delivers it to the project site and installs it, an ODOT engineer must certify that it is in the correct location. According to Mr. Karvounides, once the equipment is installed, Karvo does not interact with the equipment until the project is complete. The equipment remains at the work site when Karvo's employees are not present. Karvo also argues that, if it had the choice, it would perform the contracts without so much traffic maintenance equipment, preferring to maintain traffic by using barrels and working on smaller sections of road at a time. Karvo contends that, under Section 5501.11, it is ODOT that has the statutory duty to maintain and repair state highways. Renting the traffic maintenance equipment helps ODOT perform that duty. Karvo also notes that the traffic maintenance equipment it provides to ODOT replaces the permanent signs and barriers that ODOT had installed along the roads. Karvo argues that its duty to repair the traffic maintenance equipment during the project is no different than the typical equipment rental, in which the lessor is expected to replace or repair defective equipment. Karvo further argues that any use of the equipment by it, such as transporting the equipment to the job site, is merely incidental to its rental of the equipment to ODOT.

{¶15} Upon review of the record, we conclude that the Board's finding that ODOT has possession of the traffic maintenance equipment while Karvo is performing its contracts is supported by reliable and probative evidence and is not against the weight of the evidence. Mr. Karvounides testified that the traffic maintenance equipment that ODOT requires during projects is not part of its paving work. Instead, ODOT orders the equipment to protect drivers from going into the work zone. The fact that Karvo retakes possession of the property at the conclusion of the projects is not significant because the definition of "[s]ale" under Section 5739.01 specifies that transactions can be "for a price or rental[.]" R.C. 5739.01(B). We note that, under Section

5739.01(UU)(1)(c), a lease or rental does not include "[p]roviding tangible personal property along with an operator for a fixed or indefinite period of time, if the operator is necessary for the property to perform as designed." In order to fall outside of the definition of a lease, however, "the operator must do more than maintain, inspect, or set up the tangible personal property." *Id*. Accordingly, the fact that Karvo may set up the traffic maintenance equipment and maintain it for ODOT does not mean that it cannot qualify as leased.

{¶16} The Commissioner relies on several cases in support of its arguments. It cites *Central Transport, Inc. v. Tracy*, 72 Ohio St.3d 296 (1995), to establish what type of "use" is taxable. The issue in this case, however, is whether Karvo's otherwise taxable use of the traffic maintenance equipment is exempt under Sections 5739.01(E) and 5741.02. *See Cincinnati Reds, L.L.C. v. Testa*, 155 Ohio St.3d 512, 2018-Ohio-4669, ¶ 36 (concluding that use tax cannot be imposed on items subject to the sale-for-resale exemption under Section 5739.01(E)). The Commissioner cites *Hyatt Corp. v. Limbach*, 69 Ohio St.3d 537 (1994), and *Crew 4 You v. Wilkins*, 105 Ohio St.3d 356, 2005-Ohio-2167, as examples of the type of resales to which the exemption under Section 5739.01(E) applies. He argues that those cases illustrate that a subsequent, distinguishable sale must occur in order for the resale exclusion to apply. Contrary to the Commissioner's assertion, the Board found that the separate, distinguishable sale in this case occurred when Karvo rented the traffic maintenance equipment it purchased to ODOT for the duration of the construction projects.

{¶17} The Commissioner cites *Laurel Transportation, Inc. v. Zaino*, 92 Ohio St.3d 220 (2001), and *Fliteways, Inc. v. Lindley*, 65 Ohio St.2d 21 (1981), for the premise that an airplane is not sold if the charter flight company retains title and possession of the plane and also provides the pilot, even if the customer directs the pilot when and where to travel. It also cites *Stein, Inc.*

*v. Tracy*, 84 Ohio St.3d 501 (1999), in which a company provided heavy equipment to a steelmaker, who directed the equipment operator's activities on site. Unlike in those cases, Karvo did not provide an operator for its equipment and even instructed ODOT on how to change the message on the message boards it provided. The Commissioner argues that Karvo was required to maintain the equipment and also had to hire a workplace traffic supervisor to monitor traffic flow and the traffic-maintenance equipment. As explained earlier, the fact that Karvo inspected and maintained the equipment does not mean that it cannot qualify as leased property. *See* R.C. 5739.01(UU)(1)(c).

{¶18} The Commissioner cites *MIB, Inc. v. Tracy*, 83 Ohio St.3d 154 (1998), for the premise that a customer must acquire possession for a sale to occur. The Board found that Karvo transfers possession of the traffic maintenance equipment to ODOT, so its determination that Karvo resold the equipment is consistent with *MIB, Inc.* Karvo also argues that the Board's decision is inconsistent with *Al Johnson Construction Co. v. Kosydar*, 42 Ohio St.2d 29 (1975), and *R. Wantz & Sons Construction Co. v. Kosydar*, 38 Ohio St.2d 277 (1974). In *Al Johnson Construction Co.*, a contractor who was building locks on the Ohio River built a temporary cofferdam that it removed at the end of the project. The Ohio Supreme Court determined that the materials the contractor used to build the dam were not exempt from taxation. *Id*. at 36. The construction company in that case, however, argued that the materials were exempt because they were incorporated into a structure under a construction contract under Section 5739.02(B)(13). This case involves the application of Section 5739.01(E), which was not at issue in *Al Johnson Construction Co.*, so we conclude that it is distinguishable.

{¶19} In *R. Wantz & Sons Construction Co.*, a sewer contractor argued that the material, equipment, and parts it used in performing contracts for public utilities and

governmental subdivisions was not taxable. Like *Al Johnson Construction Co.*, it also involved whether the materials were incorporated into an improvement under Section 5739.02(B)(13), which is not at issue in this case. *Id*. at 278-279. The contractor also argued that the material was exempt under Section 5739.01(Q) and (S), which are not at issue in this appeal. Accordingly, *R. Wantz & Sons Construction Co.* is also distinguishable.

{¶20} The Commissioner next argues that the Board incorrectly relied on *Dresser Industries, Inc. v. Lindley*, 12 Ohio St.3d 68 (1984), because title of the property at issue in that case ended up passing from the manufacturer to the government, unlike in this case. The Board, however, merely cited *Dresser Industries*, to explain that, when considering whether the resale exemption applies, it is the purported reseller's primary use of the property that controls whether the property is exempt. *Id*. at 69.

{¶21} Regarding the Commissioner's argument that expanding the definition of sale to this situation will have far reaching implications, we disagree. The Board found that under the specific facts of this case, ODOT obtained possession of the traffic maintenance equipment. Because the Board's determination is limited to the particular facts of this case, we do not agree that its decision substantially expanded the scope of Ohio's sales tax.

{¶22} Upon review of the record, we conclude that the Board's determination that the traffic maintenance equipment is excepted from taxation under Section 5739.01(E) was reasonable and lawful. The Commissioner's second assignment of error is overruled.

COMMISSIONER'S ASSIGNMENT OF ERROR III

> WHEN THE SELLER OF EMPLOYMENT SERVICES DOES NOT "OWN" OR "CONTROL" THE CORPORATE PURCHASER OF THE EMPLOYMENT SERVICES, THEN, UNDER THE PLAIN LANGUAGE OF R.C. 5739.01(JJ)(3), THE COMPANIES CANNOT QUALIFY AS "AFFILIATED ENTITIES" TO EXCLUDE THE PURCHASE FROM SALES TAX.

{¶23} The Commissioner's remaining assignment of error is that the Board incorrectly concluded that Karvo did not have to pay tax on the employment services that K&H provided to it because K&H was an affiliated entity. Under Section 5739.01(B)(3)(k), employment services are generally included in the definition of "[s]ale[.]" Under Section 5739.01(JJ)(4), however, employment services does not include "[t]ransactions between members of an affiliated group * * *." An affiliated group "means two or more persons related in such a way that one person owns or controls the business operation of another member of the group. In the case of corporations with stock, one corporation owns or controls another if it owns more than fifty per cent of the other corporation's common stock with voting rights." R.C. 5739.01(B)(3)(e). The Board found that Karvo and K&H were part of an affiliated group because they were both controlled by Mr. Karvounides. It, therefore, concluded that the employment services that K&H provides to Karvo were not taxable.

{¶24} The Commissioner argues that Karvo and K&H cannot be affiliated because they did not have common ownership. It notes that, although Mr. Karvounides owns all of Karvo, he only owned 45% of K&H while his wife owned the remainder. The Commissioner also argues that Karvo did not control K&H, noting that K&H operated as a separate company. He also points out that one corporation can only be deemed to own or control another corporation if it owns 50% of the other's stock.

{¶25} Under Section 5739.01(B)(3)(e), an affiliated group can contain more than two members. The Board found in this case that the group had three members: Karvo, K&H, and Mr. Karvounides. It found credible Mr. Karvounides's testimony that he controlled the operations of both Karvo and K&H, even though his wife was the majority owner of K&H. The Commissioner has not challenged the Board's credibility finding. The language in Section

5739.01(B)(3)(e) regarding ownership or control of one corporation over another is not applicable because K&H is a limited liability company, not a corporation.

{¶26} Upon review of the record, we conclude that the Board's determination that Mr. Karvounides, Karvo, and K&H were part of an affiliated group is supported by reliable and probative evidence. Because they were part of an affiliated group, we conclude that the Board correctly determined that the employment services K&H provided to Karvo were exempt from taxation under Section 5739.01(JJ)(4). The Commissioner's third assignment of error is overruled.

KARVO'S ASSIGNMENT OF ERROR

> THE CASUAL SALE EXEMPTION APPLIES TO PROPERTY LEASES WHERE THE PROPERTY WAS PREVIOUSLY USED BY THE LESSOR (AND ITS PREDECESSOR) AND SUBJECT TO OHIO'S TAXING JURISDICTION. NO PROOF THAT TAX WAS ACTUALLY PAID ON THE PREVIOUS PURCHASE OR USE OF SUCH PROPERTY IS NECESSARY.

{¶27} Karvo argues that the Board incorrectly concluded that the casual sale exemption did not apply to the equipment it rented from K&H. Section 5739.02(B)(8) provides that sales tax does not apply to casual sales. In relevant part, "'[c]asual sale' means a sale of an item of tangible personal property that was obtained by the person making the sale, through purchase or otherwise, for the person's own use and was previously subject to any state's taxing jurisdiction on its sale or use * * *." R.C. 5739.01(L). The Board found that, because the only business that K&H conducted was to lease equipment, the leases cannot be said to have been casual.

{¶28} Karvo argues that the Board incorrectly concluded that the casual sale exemption cannot apply to a lease. In its decision, the Board noted that the Commissioner made three arguments regarding whether the leases qualified as casual sales. First, he argued that the sales could not be regarded as casual because K&H's entire business was leasing equipment. Second,

he argued that there is no concept of "casual leases" under Section 5739.01. Third, he argued that Karvo had failed to demonstrate that sales tax was previously paid on the equipment in question.

{¶29} Although the Board wrote that it agreed with the Commissioner, of the three arguments that the Commissioner made, the only one that the Board discussed in its decision was his argument that K&H's business was limited to leasing equipment. Because the Board concluded that it was an independent and sufficient reason for determining that the casual sale exemption did not apply, we cannot say that the Board adopted the Commissioner's argument that the casual sales exemption cannot apply to a lease.

{¶30} Karvo next argues that the Board incorrectly concluded that it had to prove that sales tax had been paid on the leased equipment for the casual sales exemption to apply. Again, although that was an argument made by the Commissioner, it does not appear to have been a basis of the Board's decision.

{¶31} Karvo also argues that the Board incorrectly found that K&H's only business was leasing equipment. It argues that, before it began leasing the equipment, it used the equipment to provide excavation services to clients. Mr. Karvounides testified that K&H bought the equipment from its previous owner around 2000. Initially, K&H continued doing the same type of work as the company it had purchased the equipment from, which was site work excavation. After a few years, however, the employee that had been in charge of bidding that type of work left K&H so it stopped doing excavation work. From that point on, K&H only leased equipment to Karvo and performed maintenance on the equipment.

{¶32} The Board found that the only business that K&H conducted during the audit period was leasing equipment. Although that is true, the definition of casual sale does not

contain any time limits. The sold item must only have been "obtained by the person making the sale * * * for the person's own use and was previously subject to any state's taxing jurisdiction on its sale or use * * *." R.C. 5739.01(L). In addition, the Board's finding that Karvo "retain[ed] K&H as a separate entity and operat[ed] it solely as a leasing business" is not supported by reliable and probative evidence because it overlooks Mr. Karvounides's testimony that K&H initially performed excavating work with the equipment, and it specifically found him credible as to his other testimony.

{¶33} The Commissioner argues that the equipment leases cannot qualify as casual sales because K&H's entire business was equipment leasing, meaning the leases at issue cannot be considered casual or isolated. He also argues that Karvo was required to prove that taxes previously had been paid on the equipment. The Board did not analyze these arguments in its decision, however, and we decline to address them in the first instance. *See Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, ¶ 37 (declining to make factual findings in the first instance).

{¶34} We conclude that the Board incorrectly found that K&H operated solely as a leasing business and incorrectly held that the casual sale exemption cannot apply unless the seller used the item within the audit period. Karvo's assignment of error is sustained.

III.

{¶35} The Commissioner's assignments of error are overruled. Karvo's assignment of error is sustained. The Board of Tax Appeals's decision is vacated in part, and this matter is remanded to the Board to re-examine whether the equipment K&H leased to Karvo is exempt under Section 5739.02(B)(8).

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Ohio Board of Tax Appeals, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant/Cross-Appellee.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶36} I respectfully dissent from the judgment of the majority as I would conclude that this Court lacks jurisdiction over this appeal and that jurisdiction is proper

in the Tenth District Court of Appeals.  In so doing, I would adopt the reasoning of the Tenth District set forth in *Stines v. Limbach*, 61 Ohio App.3d 461 (10th Dist.1988).

{¶37}  Former R.C. 5717.04 provides in relevant part:

The proceeding to obtain a reversal, vacation, or modification of a decision of the board of tax appeals shall be by appeal to the court of appeals for the county in which the property taxed is situated or in which the taxpayer resides.  If the taxpayer is a corporation, then the proceeding to obtain such reversal, vacation, or modification shall be by appeal to the court of appeals for the county in which the property taxed is situated, or the county of residence of the agent for service of process, tax notices, or demands, or the county in which the corporation has its principal place of business.  In all other instances, the proceeding to obtain such reversal, vacation, or modification shall be by appeal to the court of appeals for Franklin county.

The section also indicates that "'taxpayer' includes any person required to return any property for taxation." *Id.*

{¶38} As in *Stines*, because of the facts before us, "there can be no person required to return property for taxation, and thus, no 'taxpayer' to file an appeal." *Id.* at 464.  Former "R.C. 5717.04 specifically defines 'taxpayer' as used in R.C. 5717.04 as including 'any person required to return any property for taxation.'  This taxpayer definition clarifies the use of the word 'taxpayer in [the statute] and it is limited in meaning to taxpayers with respect to property which is taxed." *Id.* at 465.  Since this is not a property tax matter, the situation before this Court is the one referenced as "all other instances" in the statute.  *See id.*; former R.C. 5717.04.  Accordingly, jurisdiction is proper in the Franklin County Court of Appeals and not in this Court.  *See* former R.C. 5717.04.  Therefore, I respectfully dissent.

APPEARANCES:

DAVE YOST, Attorney General, and DANIEL W. FAUSEY and KODY R. TEAFORD, Assistant Attorneys General, for Appellant/Cross-Appellee.

STEVEN A. DIMENGO, Attorney at Law, for Appellee/Cross-Appellant.