[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Put-in-Bay v. Mathys*, Slip Opinion No. 2020-Ohio-4421.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4421

THE VILLAGE OF PUT-IN-BAY, APPELLEE, *v.* MATHYS ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Put-in-Bay v. Mathys*, Slip Opinion No. 2020-Ohio-4421.]

*Village ordinance imposing tax on vehicles for hire does not violate Ohio Constitution—Judgment affirmed.*

(No. 2019-0324—Submitted March 10, 2020—Decided September 16, 2020)

APPEAL from the Court of Appeals for Ottawa County, Nos. OT-18-006 and OT-18-007, 2019-Ohio-162.

_____

STEWART, J.

{¶ 1} In this appeal we are asked to decide whether Section 858.01 of the Codified Ordinances of the Village of Put-In-Bay imposes an unconstitutional tax on motor vehicles. We hold that the ordinance does not impose an unconstitutional tax, and thus, we affirm the judgment of the Sixth District Court of Appeals that

reversed the trial court's dismissal of criminal charges against defendants-appellants, Mark Mathys and Islander Inn, L.L.P.,[1] alleging failure to pay the tax.

**Facts and Procedural History**

{¶ 2} The village of Put-in-Bay is a small municipality and vacation destination located on South Bass Island in Lake Erie. Section 858.01 of the Codified Ordinances of the Village of Put-In-Bay requires that owners of vehicles that are made available for hire and use within the municipality pay a "license fee" on those vehicles. Section 858.01 states:

(a) Owners of vehicles used for the transportation of persons or property, for hire and for use within the Village, shall pay by June 15 of each year, an annual, nontransferable vehicle license fee for each vehicle as follows:

| | |
|---|---|
| (1) Buses and/or trolleys and/or self-powered trams | $300.00 |
| (2) Tour train cars and/or towed tram car/unit | $225.00 |
| (3) Taxicabs: | |
| A. Motor-driven | $225.00 |
| B. Horse-driven | $225.00 |
| C. Pedicab bicycles | $50.00 |

---

1. The original complaints filed in the Put-in-Bay Mayor's Court named the defendants as "SB-Delaware Rentals, Inc. (c/o Mark Mathys)" and "Islander Inn, L.L.P., d.b.a. Islander Inn (c/o Timothy L. Niese Sr.)." However, the attorney for the defendants requested that the cases be transferred to the common pleas court, and upon transfer, defendants' counsel filed a notice of appearance and identified Mark Mathys as his client in the *SB-Delaware Rentals* case and Islander Inn as his client in the other case. Thereafter, defense counsel, the common pleas court, and the Sixth District Court of Appeals referred to the defendant in the SB-Delaware Rentals case as Mark Mathys.

| | |
|---|---|
| (4) Bicycles | $15.00 |
| (5) Motorized bicycle/mopeds | $37.50 |
| (6) Golf carts/under-speed vehicles/low-speed vehicles | $50.00 |
| (7) Rental motor vehicles/vehicles | $50.00 |

(b) All moneys and receipts which are derived from the enforcement of this section shall be credited and paid into a separate fund, which fund shall be known as the Public Service Street Repair Fund. All moneys and receipts credited to such Fund shall be used for the sole purpose of repairing streets, avenues, alleys and lanes within the Village of Put-in-Bay.

{¶ 3} Subsection (c) of the ordinance requires that a "vehicle-fee paid" document be exhibited on every vehicle that is made available for hire. A violation of Section 858.01 is a fourth-degree misdemeanor, and "[a] separate offense shall be deemed committed for each rental vehicle for which the vehicle license fee provided for in Section 858.01 remains unpaid." Put-in-Bay Codified Ordinances 858.99.

{¶ 4} Matthys and Islander Inn operate businesses that make motorized golf carts available for rent within the village. In early 2015, the village filed separate criminal complaints against Mathys and Islander Inn for failing to pay the annual license fee[2] on their golf carts by June 15 of the preceding year.

---

2. We note that municipalities are permitted to license and regulate vehicles for hire. *See* R.C. 715.66; *see also* R.C. 715.22(A) and (B). However, the Ottawa County Court of Common Pleas has previously determined that the "license fee" referred to in Section 858.01 is not a fee imposed pursuant to the village's power to license and regulate vehicles for hire but is rather a tax imposed for the purpose of generating revenue. *See S.B. Carts, Inc. v. Put-In-Bay*, 161 Ohio App.3d 691, 2005-Ohio-3065, 831 N.E.2d 1052, ¶ 5-7. The parties do not dispute that Section 858.01 imposes

**{¶ 5}** Mathys and Islander Inn moved to dismiss the criminal complaints, asserting that Section 858.01 violates the Ohio Constitution for two reasons. First, citing this court's decision in *Firestone v. Cambridge*, 113 Ohio St. 57, 148 N.E. 470 (1925), in which we held that "[n]o municipality in this state has power to levy [an] excise tax [upon owners of motor vehicles residing in the municipality for the privilege of operating the motor vehicles upon the streets, for the purpose of creating a fund to be used for cleaning, repairing, and maintaining the streets of the municipality] in addition to that levied by the state for similar purposes," Mathys and Islander Inn argued that Section 858.01 is an impermissible tax under Article XVIII, Section 13 of the Ohio Constitution, because the General Assembly has preempted the municipal tax by levying a similar state tax on the operation of motor vehicles on public roads. *See* R.C. 4503.02 (imposing an annual state license tax on the operation of motor vehicles on public roads and highways); *see also* R.C. 4504.02 (permitting counties to adopt legislation that imposes an additional $5 tax on vehicle licenses); R.C. 4504.06 (permitting municipalities to adopt legislation that imposes an additional $5 tax on vehicle licenses, provided the county has not adopted such legislation under R.C. 4504.02). Second, Mathys and Islander Inn argued that because there is not a state statute enabling expenditure of the money derived from the municipal tax levied pursuant to Section 858.01, the ordinance violates Article XII, Section 5a of the Ohio Constitution, which prohibits "moneys derived from fees, excises, or license taxes related to registration, operation, or use of vehicles on public roadways" from being expended on things other than "statutory highway purposes."

**{¶ 6}** In its opposition to the motions to dismiss, the village argued that the doctrine of implied preemption, which we applied in *Firestone*, is no longer

---

a tax. Indeed, the parties continuously refer to Section 858.01 as a tax throughout their briefs. Accordingly, for purposes of this appeal, we assume that Section 858.01 is a tax on vehicles for hire.

applicable in this area of law in light of this court's later decision in *Cincinnati Bell Tel. Co. v. Cincinnati*, 81 Ohio St.3d 599, 693 N.E.2d 212 (1998). In *Cincinnati Bell*, we made clear that the "taxing authority of a municipality may be preempted or otherwise prohibited only by an express act of the General Assembly." *Id.* at syllabus. The village argued that because nothing in R.C. 4503.02, 4504.02, 4504.06, or any other statute expressly prohibits the type of tax imposed by Section 858.01—which, according to the village, is a business tax on vehicles for hire and not a tax on the operation of motor vehicles on public roadways—Section 858.01 is not preempted by state statute. Regarding Mathys and Islander Inn's claim that Section 858.01 also violates Article XII, Section 5a of the Ohio Constitution, the village directed the trial court's attention to our decision in *Garrett v. Cincinnati*, 166 Ohio St. 68, 69, 139 N.E.2d 35 (1956), in which we stated that Article XII, Section 5a is a "limitation only on the use of state-imposed fees, excise and license taxes and is not applicable to fees imposed by municipal corporations." The village argued that because a municipal corporation imposes the Section 858.01 tax, the limitations set forth in Article XII, Section 5a do not apply to it and therefore do not render the ordinance unconstitutional.

{¶ 7} Following a hearing on the motions, the trial court entered an order dismissing the criminal complaints on the basis that Section 858.01 is for a similar purpose as the annual state license tax levied on the operation of motor vehicles under R.C. 4503.02 and the local government tax permitted by R.C. 4504.02 and 4504.06. The trial court did not determine whether Section 858.01 is unconstitutional under Article XII, Section 5a.

{¶ 8} On appeal, the Sixth District Court of Appeals reversed. In reaching its decision that Section 858.01 was not preempted by state law and therefore did not violate Article XVIII, Section 3 or 13 of the Ohio Constitution, the court agreed with the village that *Firestone*, 113 Ohio St. 57, 148 N.E. 470, had been overruled by *Cincinnati Bell* and that nothing in the General Assembly's vehicle-taxing

statutes expressly prohibits the type of tax imposed by the village ordinance. 2019-Ohio-162, 131 N.E.3d 343, ¶ 13-15. Specifically, the court noted that although

> R.C. 4504.06 seems similar [to Section 858.01], at first blush, by permitting a municipal corporation to "levy an annual license tax * * * upon the operation of motor vehicles on the public roads or highways" at the rate of $5 per motor vehicle, this statute makes no mention of a tax imposed on a *business* operating a vehicle-for-hire company. By the plain language of Section 858.01, it applies to businesses based on the size of their vehicle-for-hire fleets, and it is not an annual license tax of the type contemplated in R.C. 4504.06.

(Ellipsis and emphasis sic.) *Id.* at ¶ 15.

{¶ 9} Having determined that Section 858.01 is not preempted by state law, the Sixth District turned to whether the tax violates Article XII, Section 5a of the Ohio Constitution. 2019-Ohio-162, 131 N.E.3d 343, at ¶ 16. The appellate court agreed with the village that our holding in *Garrett,* 166 Ohio St. 68, 69, 139 N.E.2d 35, makes clear that Section 5a limits the use of only state-imposed fees and excise and license taxes and noted that "because Section 858.01 is a tax imposed by a municipality, Section 5a does not operate to limit it." 2019-Ohio-162, 131 N.E.3d 343, at ¶ 17.

{¶ 10} Mathys and Islander Inn appealed, and we accepted the following propositions of law:

> First Proposition of Law: Because Ohio licenses vehicles for use on all public roadways in exchange for payment of an annual statutory tax on vehicles, no municipality in this state may levy an

additional local tax for similar purposes—otherwise, localities could negate or attach additional strings to statewide licenses.

> Second Proposition of Law: Under Ohio Constitution Art. XII, Section 5a, any moneys collected from taxes levied on motor vehicles must be expended solely for a *statutory* purpose, therefore, a statute—not an ordinance—must enable the expenditure, and hence the exaction, of a vehicle tax.

(Emphasis sic.) *See* 155 Ohio St.3d 1455, 2019-Ohio-1759, 122 N.E.3d 216.

**Analysis**

{¶ 11} The two propositions of law before us assert that Section 858.01 violates the Ohio Constitution. We review constitutional challenges to state and local legislation de novo, *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15 (plurality opinion), with the understanding that duly enacted laws are afforded a strong presumption of constitutionality, *Yajnik v. Akron Dept. of Health, Hous. Div.,* 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16. To overcome this presumption, the party challenging the law must prove the law unconstitutional beyond a reasonable doubt. *Id.* In this case, we determine that Mathys and Islander Inn failed to meet their burden of proof.

*Preemption*

{¶ 12} Article XVIII, Section 3 of the Ohio Constitution, also known as the Home Rule Amendment, grants municipalities the authority to "exercise all powers of local self-government." Included within this broad grant of authority is the right of local governments to levy taxes. *State ex rel. Zielonka v. Carrel*, 99 Ohio St. 220, 227, 124 N.E. 134 (1919). This right is not absolute, however. Article XVIII, Section 13, and Article XIII, Section 6 of the Ohio Constitution enable the General Assembly to pass laws that limit municipal taxing authority. *See Gesler v.*

*Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, ¶ 19, 20.

{¶ 13} Multiple times over the past century, we have been asked to determine whether various municipal taxes conflict with laws passed by the General Assembly and are therefore invalid. In one of our earlier cases, *Firestone*, 113 Ohio St. 57, 148 N.E. 470, which Mathys and Islander Inn urge us to apply here, we stated that the General Assembly may either expressly or implicitly limit the power of municipalities to levy taxes. *Id*. at 67.

{¶ 14} In *Firestone*, we addressed whether a municipality could, through the enactment of a local ordinance, require automobile owners to pay a tax for the right to use their motor vehicles on the streets of the municipality. Finding that the General Assembly had already acted to levy an excise tax on the owners of motor vehicles operating on public highways for the purpose of maintaining and repairing those roads, we held that the municipality could not levy its own tax. *Id.* at 66-67. In reaching this decision, we followed the syllabus in *Cincinnati v. Am. Tel. & Tel. Co.*, 112 Ohio St. 493, 147 N.E. 806 (1925), which states that the power to levy a municipal tax does not extend to fields that have already been occupied by the state. *Firestone* at 66. Our syllabus in *Firestone* states:

> The assessment of an annual fee by a municipal ordinance, upon owners of motor vehicles residing in the municipality, for the privilege of operating such motor vehicles upon the streets thereof, for the declared purpose of producing a fund to be used for the cleaning, maintenance, and repair of the streets of the municipality, to which use it is thereby appropriated, though denominated a license fee, is an "excise tax."
>
> No municipality in this state has power to levy such excise tax in addition to that levied by the state for similar purposes.

{¶ 15} In the decades that followed our decision in *Firestone*, we cited the case as an example of this court's application of the implied-preemption doctrine. *See, e.g., E. Ohio Gas Co. v. Akron*, 7 Ohio St.2d 73, 77, 218 N.E.2d 608 (1966). But as the years passed, we also came to question the doctrine's practicality. *See id*. (observing that when applying the doctrine, the court's language had sometimes been "obscure, ambiguous, inconsistent and, on occasion, almost contradictory to previous cases in stating the grounds upon which the court's judgment was based"). Ultimately, in *Cincinnati Bell*, 81 Ohio St.3d 599, 693 N.E.2d 212, we abandoned use of the doctrine after reexamining the constitutional provisions at issue and determining that municipal taxing authority under Article XVIII, Section 3 of the Ohio Constitution is a power that exists coextensively with the General Assembly's power to limit municipal taxes under Article XVIII, Section 13, and Article XIII, Section 6. Because the rights conferred in the constitutional provisions exist on equal footing, we concluded that "[i]n the absence of an express statutory limitation demonstrating the exercise, by the General Assembly, of its constitutional power, acts of municipal taxation are valid," even when a municipal tax occupies the same field as a state tax. *Cincinnati Bell* at 606. As recently as 2013, we have adhered to our decision in *Cincinnati Bell*, requiring that the General Assembly act expressly to preempt municipal taxation in a particular field. *See Gesler* at ¶ 18, 20.

{¶ 16} With this background in mind, we now turn to the first proposition of law. Mathys and Islander Inn contend that the General Assembly has acted to limit municipal authority to tax motor vehicles by enacting its own statutory scheme that taxes vehicle licensure and allows counties and municipalities to impose only what Mathys and Islander Inn refer to as "piggyback" license taxes. *See* R.C. 4503.02 (imposing an annual state licensing tax); *see also* R.C. 4504.02 (allowing an additional $5-per-vehicle county tax); R.C. 4504.06 (allowing an additional $5-

per-vehicle municipal tax in certain circumstances). They assert that the arrangement of an overarching state tax that allows for counties and municipalities to "piggyback" additional taxes on that tax in $5 increments proves that "Ohio has a singular statewide motor-vehicle licensing framework that no municipality may intrude upon absent statutory enablement."

{¶ 17} At bottom, Mathys and Islander Inn contend that the General Assembly has implicitly preempted the tax imposed by Section 858.01 by imposing a state license tax on motor vehicles. Aware that their argument is at odds with our holding in *Cincinnati Bell*, Mathys and Islander Inn argue that *Cincinnati Bell* is not applicable "to the situation of the licensing of motor-vehicles," which, according to them, "traditionally occup[ies] a special place in the law." Mathys and Islander Inn urge us to apply our holding in *Firestone*, 113 Ohio St. 57, 148 N.E. 470, instead. They assert that if we hold that *Firestone* was overruled by *Cincinnati Bell*, then municipalities could "unilaterally create their own diverse array of motor-vehicle licensing programs by levying local taxes," to the effect of requiring separate taxes to be paid and licenses to be displayed in every municipality in Ohio simply to operate one's vehicle on public roads. What Mathys and Islander Inn fail to realize is that our holding in *Firestone* became obsolete long before we decided *Cincinnati Bell*.

{¶ 18} When this court decided *Firestone* in 1925, the General Assembly had yet to enact legislation permitting the additional local-government vehicle-license taxes found in R.C. 4504.02 and 4504.06. But it had enacted legislation imposing a statewide annual license tax, which was similar to the license tax that the state now collects under R.C. 4503.02. *See* G.C. 6291 ("An annual license tax is hereby levied upon the operation of motor vehicles on the public roads or highways of this state, for the purpose of enforcing and paying the expense of administering the law relative to the registration and operation of such vehicles and of maintaining and repairing public roads and highways and streets"). Since

10

nothing at the time permitted local governments to levy a tax on the operation of motor vehicles on public roads and highways—which is what the ordinance at issue in *Firestone* attempted to do—we followed our legal precedent by applying the doctrine of implied preemption and held that the state tax preempted the local tax by occupying the field. The holding in *Firestone*'s syllabus that "[n]o municipality in this state has power to levy such excise tax in addition to that levied by the state for similar purposes" had to do with the municipality's attempt to levy a tax on motor-vehicle operation and use on public roads. The law stated in the syllabus was superseded by statute in 1967, when the General Assembly enacted R.C. 4504.02 and 4504.06, Am.Sub.H.B. No. 919, 132 Ohio Laws, Part II, 2787 (enactment of law); 132 Ohio Laws, Part I, 1546 and 1550 (text of law), which expressly permit local governments to levy their own, albeit limited, tax on the operation of motor vehicles on public roads.

{¶ 19} In light of these statutes, which remain in effect to this day, we find that there is nothing left of our holding in *Firestone* that applies to the present case, not even as dicta. Indeed, what remains of *Firestone* is nothing more than an example of this court's having at one time applied the doctrine of implied preemption to determine the validity of local tax laws. As we have already explained, this court did away with that approach when, in the syllabus of *Cincinnati Bell*, 81 Ohio St.3d 599, 693 N.E.2d 212, we unequivocally stated that "[t]he taxing authority of a municipality may be preempted or otherwise prohibited *only by an express act of the General Assembly*." (Emphasis added.)

{¶ 20} As an alternative argument, Mathys and Islander Inn assert that the state vehicle-licensing tax scheme is itself "an express restriction on municipalities," since it specifies the amount municipalities may tax. On this point, we largely agree. But as the discussion that follows demonstrates, this fact does not affect the outcome of this case.

**{¶ 21}** R.C. 4503.02 imposes an annual statewide license tax on the operation of motor vehicles on public roads and highways. The purpose of the tax is to enforce and pay the expense of administering laws related to the registration and operation of motor vehicles, and, among other things, defray the costs of maintaining and repairing state roadways. R.C. 4503.02. In addition to the statewide license tax, the General Assembly has seen fit to allow local governments a limited right to also impose a tax on the operation of motor vehicles on public roads and highways, for the purpose of maintaining and repairing local roads, in addition to other specified purposes. Specifically, R.C. 4504.02 states that county governments may impose an additional $5 license tax on each motor vehicle registered in the county. Likewise, R.C. 4504.06 allows municipalities to impose a $5 license tax when the county has chosen not to impose its own tax.

**{¶ 22}** By restricting how local governments may go about imposing a license tax on the operation of motor vehicles on public roads and by imposing a cap on how much they may tax, the General Assembly has expressly limited a municipality's authority to tax the operation of motor vehicles. *See Ohio Fin. Co. v. Toledo,* 163 Ohio St. 81, 86, 125 N.E.2d 731 (1955) (municipal taxing authority is expressly preempted when statute expresses a clear intent to limit the municipality's authority to tax); *Panther II Transp., Inc. v. Seville Bd. of Income Tax Rev.* 138 Ohio St.3d 495, 2014-Ohio-1011, 8 N.E.3d 904, ¶ 20 ("in the context of *Cincinnati Bell*'s reasoning, the requirement of 'an express act of restriction' means only that the state does not preempt local taxes merely by enacting a similar tax of its own"). But the fact that municipalities are limited in their ability to impose a tax on the operation of a motor vehicle does not mean that the General Assembly has prohibited *all taxes involving* motor vehicles. Indeed, Mathys and Islander Inn's arguments with regard to their first proposition of law rest on the flawed assumption that the municipal tax imposed by Section 858.01 is the same as, or similar to, the state license tax. It is not.

{¶ 23} In contrast to the state vehicle-license tax imposed under R.C. 4503.02, and the additional local-government license taxes permitted by R.C. 4504.02 and 4504.06, Section 858.01 does not impose a license tax on the operation of motor vehicles on public highways. Rather, by its plain terms, Section 858.01 imposes a business tax on rental vehicles. *See* Section 858.01 ("Owners of vehicles used for the transportation of persons or property, *for hire and for use within the Village*, shall pay by June 15 of each year, an annual, nontransferable vehicle license fee for each vehicle * * *." [Emphasis added]).

{¶ 24} Because this is a business tax, we are not persuaded by Mathys and Islander Inn's arguments that upholding Section 858.01 will result in a chaotic state of local vehicle-licensing whereby every vehicle owner in Ohio will have to procure a special license just to drive from one municipality to the next. Section 858.01's tax on rental vehicles does not interfere with the operation of vehicles in the village. The "license fee" referred to in Section 858.01 does nothing to authorize or prohibit a motor vehicle, including the rental vehicles at issue here, from being operated on a public roadway within the village. And nothing in the ordinance requires that the license fee be paid for vehicles that are not rented out by the owner. Put another way, Matthys and Islander Inn may drive their golf carts in the village and may even let others use the carts without charging for their use. But if Mathys and Islander Inn want the privilege of renting those vehicles to others for use within the village, they are required to pay the tax imposed by the ordinance on their rental vehicles.

{¶ 25} Because the tax imposed by Section 858.01 is different from the state license tax and because Mathys and Islander Inn have not pointed to any provision of the Revised Code that expressly preempts the type of tax imposed by the ordinance, we hold that the tax is a constitutional exercise of the municipality's right to tax under Article XVIII, Section 3 of the Ohio Constitution.

*Constitutionality under Article XII, Section 5a*

{¶ 26} In their second proposition of law, Mathys and Islander Inn assert that Section 858.01 is unconstitutional under Article XII, Section 5a of the Ohio Constitution, which states:

> No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than costs of administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.

{¶ 27} Mathys and Islander Inn posit that implicit within this constitutional provision is the requirement that vehicle-license taxes may be imposed only by a state statute or by an ordinance that is permitted by a state statute, because the taxes collected may be expended only for *statutory highway purposes*. They further reason that because the funds collected from taxes levied by a local ordinance necessarily are expended on local purposes, or in other words, nonstatutory purposes, any ordinance imposing a vehicle-license tax is constitutionally invalid under Article XII, Section 5a.

{¶ 28} Again, this argument is based on a faulty assumption that the tax imposed by Section 858.01 is for the operation or use of vehicles on public highways. But as explained above in our preemption discussion, Section 858.01 operates as a business tax on the privilege of renting one's vehicle as a business

venture.  Because the ordinance does not concern or otherwise place any limitations on the operation or use of vehicles on public highways, we hold that Section 5a does not prohibit the village tax.

### Conclusion

{¶ 29} For the foregoing reasons, we find Mathys and Islander Inn's constitutional arguments against Section 858.01 unpersuasive.  We affirm the judgment of the Sixth District Court of Appeals and remand the matter to the Ottawa County Court of Common Pleas for further proceedings consistent with this decision.

Judgment affirmed

and cause remanded to trial court.

O'CONNOR, C.J., and PIPER and DONNELLY, JJ., concur.

FISCHER, J., concurs, with an opinion joined by KENNEDY and DEWINE, JJ.

ROBIN N. PIPER III, J., of the Twelfth District Court of Appeals, sitting for FRENCH, J.

_____

**FISCHER, J., concurring.**

{¶ 30} I agree with the majority opinion that Section 858.01 of the Codified Ordinances of the Village of Put-In-Bay does not impose an unconstitutional tax and that the judgment of the Sixth District Court of Appeals that reversed the trial court's dismissal of criminal charges against defendants-appellants, Mark Mathys and Islander Inn, L.L.P., alleging failure to pay the tax should be affirmed.  I write separately because I believe that additional analysis relating to Mathys and Islander Inn's argument as to the application of Article XII, Section 5a of the Ohio Constitution is necessary.

### Application of Article XII, Section 5a of the Ohio Constitution

{¶ 31} The majority opinion concludes that the "license fee" created by Section 858.01 is a business tax, because it operates as a tax on the privilege of

renting one's vehicle as a business venture, and thus, Article XII, Section 5a of the Ohio Constitution does not apply to it. This analysis is too simplistic, and I would address the arguments made by the parties.

{¶ 32} Ohioans voted to add Article XII, Section 5a to the Ohio Constitution in 1947 after the amendment was proposed by initiative petition. *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, ¶ 19. The amendment reflects "the will of the state's citizens to have money obtained from taxes, fees, and licenses relating to the operation of motor vehicles and motor-vehicle fuel expended exclusively for road projects, highway improvement, and other similar costs such as the enforcement of traffic laws." *Id.*, citing Ohio Secretary of State, Proposal Submitted by Initiative Petition, Certified Ballot Language, November 4, 1947; *see* 1982 Ohio Atty.Gen.Ops. No. 82-084, 1982 WL 187458. The provision was "designed to stop the diversion of tax revenues intended for highway purposes to nonhighway-related purposes." *Beaver Excavating Co.* at ¶ 20.

{¶ 33} Article XII, Section 5a, of the Ohio Constitution states:

> No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways * * * shall be expended for other than costs of administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.

**Municipalities and Article XII, Section 5a**

{¶ 34} In *Garrett v. Cincinnati*, this court noted that Article XII, Section 5a "is a limitation only on the use of *state-imposed* fees, excise and license taxes and is not applicable to fees imposed by municipal corporations."  (Emphasis added.) 166 Ohio St. 68, 69, 139 N.E.2d 35 (1956).  The court in *Garrett* reasoned that the use of the words "statutory" and "highway" in Article XII, Section 5a demonstrate the intention to limit the application of the provision to state-imposed fees, excises, and license taxes.

{¶ 35} While *Garrett* addressed a municipal fee, not a municipal tax, the same logic applies in this case—Article XII, Section 5a applies to *state-imposed* fees, excises, and license taxes, not those imposed by municipalities.  Thus, the "license fee" levied under Section 858.01 cannot be unconstitutional under Article XII, Section 5a, because that section does not apply to municipalities.

**Even if Article XII, Section 5a applied to municipalities,**

**the "license fee" imposed by Section 858.01 would not be unconstitutional**

{¶ 36} Mathys and Islander Inn argue that because Article XII, Section 5a contains no plain language limiting its application to state-imposed fees, excises, or license taxes, it applies to municipal taxes as well.  Furthermore, because Article XII, Section 5a was added to the Constitution after this court had determined that municipal corporations have the power to tax, *see State ex rel. Zielonka v. Carrel*, 99 Ohio St. 220, 227, 124 N.E.134 (1919), it could be argued that the lack of limiting language indicates that Ohioans did not intend to limit this section's applicability to state action and thus it should be read broadly to include municipal corporations.  Accepting these arguments would require us to ignore the words "statutory" and "highway" in Section 5a, which directly point to state function, as we noted in *Garrett*.  But even if we were to agree with Mathys and Islander Inn, overrule *Garrett*, and apply Article XII, Section 5a to municipal taxes, the "license fee" in Section 858.01 would not be unconstitutional.  .

{¶ 37} The "license fee" in Section 858.01 is an excise tax, because it is a tax on the privilege of renting one's vehicle as a business venture. *See Saviers v. Smith*, 101 Ohio St. 132, 128 N.E. 269 (1920), syllabus. Therefore, the "license fee" meets the first requirement in Article XII, Section 5a, as an excise tax.

{¶ 38} The next determination to be made in deciding whether Article XII, Section 5a is applicable is whether the "license fee" is an excise tax "relating to" the registration, operation, or use of vehicles on public highways. We have held that "the phrase 'relating to' [in Article XII, Section 5a] should be construed according to the plain and ordinary meaning given in the context of 'political discussions and arguments,' in order to carry out the intention and objectives of the people in making the Constitution, both as it was adopted and as it has been amended." *Beaver Excavating Co.*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, at ¶ 30. The purpose of Article XII, Section 5a is to ensure that *any* revenue raised from fees or taxes *relating to* registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles is expended only for the purposes specified in Section 5a. *Id.* Thus, we have construed the phrase "relating to" in Section 5a broadly. *See id*. at ¶ 31-32. If we construe "relating to" broadly, then it is quite clear that the Section 858.01 "license fee" relates to the operation or use of vehicles on public highways. As is recognized in the majority opinion, Section 858.01 requires Mathys and Islander Inn to pay the excise tax in order to rent their golf carts out to other people to drive around Put-in-Bay. Therefore, the "license fee" relates to the operation or use of vehicles on public highways.

{¶ 39} We then must determine whether the "license fee" created by Section 858.01 is an excise tax that the revenue from which is expended for costs other than those permitted by Article XII, Section 5a. Section 5a permits the revenue to be expended for

18

> costs of administering [the law], statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.

Section 858.01 specifically provides that "[a]ll moneys and receipts which are derived from the enforcement of this section shall be credited and paid into a separate fund" and "[a]ll moneys and receipts credited to such [f]und shall be used for the sole purpose of repairing streets, avenues, alleys and lanes within the Village of Put-in-Bay." This purpose appears to be in line with the purpose indicated in Article XII, Section 5a.

{¶ 40} Therefore, even assuming arguendo that *Garrett* was wrongly decided and that Article XII, Section 5a does apply to municipalities, the "license fee" created by Section 858.01 does not violate Article XII, Section 5a.

### Conclusion

{¶ 41} Because I agree, albeit for slightly different reasons, with the majority opinion that Section 858.01 of the Codified Ordinances of the Village of Put-In-Bay does not impose an unconstitutional tax and that the judgment of the Sixth District Court of Appeals that reversed the trial court's dismissal of criminal charges against Mathys and Islander Inn should be affirmed, I respectfully concur.

KENNEDY and DEWINE, JJ., concur in the foregoing opinion.

_____

Walter Haverfield, L.L.P., Susan Keating Anderson, Village of Put-in-Bay Solicitor, and Benjamin Grant Chojnacki, for appellee.

Mayle, L.L.C., Andrew R. Mayle, and Ronald J. Mayle, for appellants.

_____